IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GENE BITTEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06-1195-JTM |
| ) | |
| PFIZER, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant Pfizer, Inc.'s motion for summary judgment (Dkt. No. 49). Plaintiff Gene Bittel, a sales representative, brought suit against his former employer, Pfizer, Inc., for alleged violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, the Kansas Act Against Discrimination (KAAD), K.S.A. § 44-1001 *et seq.*, and the Kansas Age Discrimination in Employment Act (KADEA), K.S.A. § 44-1111 *et seq.*. The motion is fully briefed and ripe for disposition. For the reasons stated below, the court grants defendant's motion.

**I. Standard of Review**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 510 (10thCir. 1998). The moving party must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Baker v. Board of Regents*, 991

F.2d 628, 630 (10th Cir. 1993).  The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate* Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*).  The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Facts

The court makes the following findings of fact.  Excluded from these findings are allegations of fact which are not supported by the cited evidence, which are grounded on hearsay or other inadmissible evidence, or which reflect an unexplained and unjustified contradiction of earlier deposition testimony. *See Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986).

Plaintiff Gene Bittel, born in 1955, was employed by defendant Pfizer, Inc., from 2003 until his termination on June 30, 2005. Prior to working for Pfizer, Bittel worked as a healthcare representative for Pharmacia, Pfizer's predecessor.  Pfizer is a pharmaceutical company engaged in the discovery, development, manufacture, and sale of prescription medications.  Bittel's job duties were to call on physicians, represent his products, and drive sales of Bextra, Celebrex, and Detrol LA in the territory covering the northwest third of Kansas.  During his employment, Bittel

was a member of the KC Searle Team, and reported to district manager Bill Giltner. Giltner, in turn, reported to Kevin Malone, who was regional manager for eight to nine states, including Kansas.

Bittel claims that his employment was terminated because of his age. He bases this claim on statistics that show a higher number of age-protected employees being dismissed from Pfizer than younger employees, and a comment Giltner made to Bittel during 2004 in which Giltner told Bittel that he felt as though Bittel had no respect for him because Bittel was much older. This comment is the only age-based statement that Bittel attributes to Giltner. Pfizer counters that Bittel was fired because of his poor work performance, and cites specific instances of unacceptable conduct discussed more fully below, including a botched teleconference, a journal club meeting gone awry, and the impermissible forward-dating of a grant application.

Generally, Bittel's performance with the company was mixed. Early in 2004, Bittel received a regional sales award for sales of Bextra. Nevertheless, later that year Giltner discerned challenges with Bittel's ability to sell effectively, and received complaints from other sales representatives who worked with Bittel. Bittel failed to effectively communicate the Pfizer message to physicians, and was placed on an immediate action plan (IAP). Because Bittel did not meet the performance requirements of the IAP after approximately 2-3 months, he was placed on a performance improvement plan (PIP), but was removed from that plan by the end of the year.

The first incident giving rise to termination was the botched teleconference. On February 10, 2005, Bittel scheduled a teleconference for a group of Hays, Kansas doctors at a Hays restaurant. Bittel did not confirm whether the restaurant had the equipment to facilitate the

event, and discovered on the day of the meeting that it did not have a phone line that would be necessary to proceed as planned.  Bittel improvised by giving the physicians a printed set of the slides that would have been shown at the meeting, and by getting the physicians' agreement to play the teleconference on a website, all in violation of Pfizer policy.  Despite the failure to comply with Pfizer policies regarding teleconferences, Bittel represented to Giltner that he held a teleconference, and requested credit for the event.  Chris Lawson, another Pfizer employee who participated in the event, was upset by Bittel's conduct, and contacted Giltner to report Bittel's compliance violations.

      Giltner informed his supervisor, Malone, about Lawson's complaint, and a meeting with Bittel was scheduled in Denver on March 21, 2005, to discuss his capabilities and performance.  Bittel secretly tape-recorded the meeting, in violation of Pfizer's policies, of which Bittel later claimed he was unaware.  During the meeting, Bittel was untruthful and changed his story regarding the teleconference incident.  A few days after this meeting, Malone drafted a final written warning to give to Bittel.  This warning was never delivered, however, because of a pending investigation into Bittel's violation of company policy that was started by Pfizer's Corporate Compliance Group.

      The second incident leading to Bittel's termination involved a journal club at the Hess Clinic, which was presented by Bittel and two other Pfizer employees on March 29, 2005.  A journal club is an activity regulated by Pfizer that is intended to generate sales to physicians.  A few days after the event, Bittel told Giltner that he held a journal club, and requested credit for the event.  Bittel's assertion created a problem, however, because the journal club he held

violated Pfizer policy. When this was brought to Giltner's attention, he discussed the problem with Malone, who referred the matter to Corporate Compliance for review and investigation.

Finally, Pfizer argues that it had reason to terminate Bittel because of his failure to comply with grant regulations. Pfizer closely monitors the use of grant funds for speaker programs, and requires that an application be submitted to track the speaker programs. Although it is a violation of Pfizer policy to forward-date a grant application, Bittel admitted to Giltner that he had done just that in 2005 to get it approved through the system, and asked Giltner how to take care of the matter. Bittel claims that forward-dating grant applications was common practice and that the company's policy was never clarified to him, but nevertheless stated during discovery that it was "now evident that forward-dating grant applications clearly violates Pharma guidelines."

Because Bittel violated Pfizer's policies on several occasions, Malone terminated his employment via telephone on June 30, 2005.

### III. Analysis

The ADEA[1] provides that "it shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623(a)(1). "Employers are to evaluate [older] employees . . . on their merits and not their age." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (quoting *Western Air Lines, Inc. v.*

---

[1] Age discrimination claims under the KADEA and the KAAD are evaluated under the same criteria used to evaluate ADEA claims. *See Veale v. Sprint Corp.,* 1997 Westlaw 49114, at *5 n. 2 (D. Kan. Feb. 3, 1997) (citing *Kansas State Univ. v. Kansas Comm'n on Civil Rights,* 14 Kan.App.2d 428, 796 P.2d 1046 (1990)). Accordingly, the court will address the age discrimination claims concurrently.

*Criswell*, 472 U.S. 400, 422 (1985)). "The employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly." *Hazen Paper*, 507 U.S. at 611.

To prevail in an ADEA claim, plaintiff "must establish that age was a determining factor in the employer's challenged decision." *Lucas v. Dover*, 857 F.2d 1397, 1400 (10th Cir. 1988) (quoting *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir. 1988)). The plaintiff "need not prove that age was the sole reason for the employer's acts, but must show that age made the difference in the employer's decision." *Sperry Corp*. 852 F.2d at 507 (quoting *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.)).

Except in cases involving direct evidence of discrimination, age discrimination claims are to be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir. 1996). Under the burden-shifting of *McDonnell Douglas*, the plaintiff must initially establish a prima facie case of discriminatory discharge. Then, defendant must offer a legitimate, nondiscriminatory reason for its employment decisions. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If the defendant does so, then the burden reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual i.e., unworthy of belief." *Marx*, 76 F.3d at 327.

*1. The Prima Facie Case*

To establish a prima facie case of age discrimination, the plaintiff must prove: (1) he is

within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and 4) he was replaced with a younger person.  *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).

Pfizer does not dispute that Bittel was within a protected age group when he was discharged; thus he has satisfied the first and third prongs of the *McDonnell Douglas* test.  Pfizer argues that Bittel cannot establish that he was doing satisfactory work at the time of his discharge, or that Pfizer filled his position with a younger person.  Pfizer relies on evidence that Bittel had been counseled about his job performance and placed on the IAP and PIP, Pfizer's internal probationary status.  Pfizer further relies on other compliance violations committed by Bittel, including the problematic teleconference, the impermissible journal club, and the forward-dated grant application.

In response, Bittel cites evidence that at the time he was terminated, he was not on probational status and that he was exceeding his sales goals.  Bittel also cites his own testimony that his work was satisfactory at the time his employment was terminated.  This is sufficient evidence to satisfy the second prong of the *McDonnell Douglas* test.  *See MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (ruling that the second prong of the *McDonnell Douglas* test can be met through  plaintiff's own testimony that his work was satisfactory, even if disputed by the employer).

Pfizer also argues that Bittel cannot establish that he was replaced by a younger person. Pfizer argues that no one replaced Bittel after he was fired, and instead the company redistributed his duties during the two-month period between his termination and Pfizer's realignment, which

occurred in the fall of 2005. Bittel counters that two much younger representatives were in fact hired within three months of his termination. The Tenth Circuit has noted that the fourth element of the prima facie case is not to be rigidly applied, and has stressed that it "is a flexible one that can be satisfied differently in varying scenarios." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005); *see, also, Plotke v. White*, 405 F.3d 1092, 1099-1101 (10th Cir. 2005). Although Pfizer has a legitimate argument, particularly because of the removal of Bextra from the market after Bittel's termination, the assumption of a former employee's duties can be sufficient to meet the fourth element and thus Bittel has established a prima facie case of age discrimination. *See Elza v. Koch Indus., Inc.*, 16 F. Supp. 2d 1334, 1342 (D. Kan. 1998).

## 2. Pretext

Bittel concedes that Pfizer has offered a legitimate, nondiscriminatory reason for terminating his employment, and thus the burden reverts back to Bittel to prove that Pfizer's proffered reasons are a pretext for discrimination. Bittel cites the following evidence in support of his claim that the proffered reasons are pretextual: (1) Giltner's involvement in the decision to terminate Bittel; (2) Giltner's age-related discriminatory comment directed toward Bittel; (3) Giltner's prior poor treatment of the plaintiff; (4) Giltner's alleged "hand" in setting plaintiff up for the policy violations which Pfizer uses to justify termination; (5) Bittel's lack of knowledge of the company policies that were violated; (6) Pfizer officials' inconsistent stories regarding Bittel's termination; and (7) statistical data showing that in Kansas, Pfizer terminated older sales representatives at a higher percentage than younger workers.

The court concludes that none of Bittel's arguments are sufficient to create an issue of material fact concerning whether Pfizer's stated reason for plaintiff's termination was pretextual. First, even if Giltner was heavily involved in the decision to terminate Bittel, that participation is not enough to establish pretext, or even to infer pretext. Second, Giltner's singe age-related comment to Bittel a year prior to his termination is not sufficient to establish pretext. It is true that "age-related comments referring directly to the worker may support an inference of age discrimination." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). Additionally, "[a]lthough isolated comments that are unrelated to the challenged action do not show discriminatory animus by themselves, the necessary causal nexus may be shown if the allegedly discriminatory comments were directed at the plaintiff." *Barnes v. Foot Locker Retail, Inc.*, 476 F. Supp. 2d 1210, 1215 (D. Kan. 2007). Nevertheless, when courts have found a basis for pretext based on a stray comment, that comment is generally more severe and direct than Giltner's comment to Bittel. For example, Bittel relies on *Barnes* to support the stray comment theory, yet in that case, the defendant's stray comment was that "they wanted someone younger and more aggressive" to replace the plaintiff. *Id.* Clearly, that stray comment was far more serious than Giltner's observation a year prior to termination that he thought Bittel might not respect him.

The court also finds Bittel's continual reference to Giltner's poor treatment of the plaintiff unpersuasive. Admittedly, several of Giltner's actions could be construed as abrasive; nevertheless, abrasiveness alone does not give rise to an ADEA claim, and plaintiff has failed to prove that any of Giltner's hostility toward the plaintiff was because of plaintiff's age. (Dkt. No.

50 contains testimony from other workers who testify that Giltner was tough on employees generally).  Further, regardless of whether Giltner had a "hand" in setting up Bittel's policy violations, the fact remains that Bittel was unfamiliar with internal company guidelines, and that he admitted to violating several policies.  Accordingly, Pfizer's proffered reasons for firing Bittel are legitimate, and not merely a pretext to hide age discrimination.

IT IS THEREFORE ORDERED this 11th day of October, 2007, that the court grants defendant's motion for summary judgment (Dkt. No. 49).  Because the court did not rely on Exhibits 29-33 to defendant's reply in support of summary judgment (Dkt. No. 59) in reaching this conclusion, plaintiff's motion to strike the exhibits (Dkt. No. 61) is denied as moot.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE